IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. |
| | ) |
| KENTUCKY UTILITIES COMPANY, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## COMPLAINT

The United States of America, by authority of the Attorney General of the United States and through the undersigned attorneys, acting at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), alleges:

### NATURE OF THE ACTION

1. This is a civil action brought against KENTUCKY UTILITIES COMPANY ("KU" or "Defendant") pursuant to Sections 113(b) and 167 of the Clean Air Act ("the Act"), 42 U.S.C. § 7413(b) and 7477, for injunctive relief and the assessment of civil penalties for violations of the Prevention of Significant Deterioration ("PSD") provisions of the Act, 42 U.S.C. §§ 7470-92, the New Source Performance Standards ("NSPS") of the Act, 42 U.S.C. § 7411, Title V of the Act, 42 U.S.C. § 7661-7661f, and the State Implementation Plan adopted by the Commonwealth of Kentucky and approved by EPA pursuant to Section 110 of the Act, 42 U.S.C. § 7410.

- 1 -

2. Defendant modified, and thereafter operated, an electric generating unit at a plant in Kentucky without first obtaining appropriate permits authorizing the modification and subsequent operation of the unit, and without installing and employing the best available control technology to control emissions of nitrogen oxides ("$NO_x$"), sulfur dioxide ("$SO_2$"), and/or particulate matter ("PM"), as the Act requires. Defendant also modified, and thereafter operated, the unit in a manner that resulted in emissions of $NO_x$, $SO_2$, and/or PM in violation of applicable New Source Performance Standards. In addition, Defendant operated the unit at a heat rate input in excess of 4128 million BTUs per hour, in violation of a condition contained in the plant's operating permit.

3. As a result of Defendant's operation of the generating units following these unlawful modifications and the absence of appropriate controls, massive amounts of $NO_x$, $SO_2$, and/or PM pollution each year have been, and still are being, released into the atmosphere.

JURISDICTION AND VENUE

4. This Court has jurisdiction of the subject matter of this action pursuant to Sections 113(b) and 167 of the Act, 42 U.S.C. §§ 7413(b) and 7477, and pursuant to 28 U.S.C. §§ 1331, 1345, and 1355.

5. Venue is proper in this District pursuant to Sections 113(b) of the Act, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1391(b), (c) and 1395(a), because violations occurred and are occurring in this District, the facilities at issue are operated by Defendant in this District, and Defendant has its headquarters and principal place of business in this District.

NOTICES

- 2 -

6. The United States has provided notice of the commencement of this action to the State of Kentucky as required by Section 113(b) of the Act, 42 U.S.C. § 7413(b).

7. The 30-day period established in 42 U.S.C. § 7413, between issuance of the Notices of Violation and commencement of a civil action, has elapsed.

THE DEFENDANT

8. Defendant owns and is an operator of fossil fuel fired electrical generating stations in Kentucky. Defendant owns and operates the E. W. Brown Plant, located in Mercer County, Kentucky.

9. Defendant is a "person" within the meaning of Section 302(e) of the Act, 42 U.S.C. § 7602(e).

STATUTORY BACKGROUND

10. The Clean Air Act is designed to protect and enhance the quality of the nation's air so as to promote the public health and welfare and the productive capacity of its population. Section 101(b)(1) of the Act, 42 U.S.C. § 7401(b)(1).

The National Ambient Air Quality Standards

11. Section 109 of the Act, 42 U.S.C. § 7409, requires the Administrator of EPA to promulgate regulations establishing primary and secondary national ambient air quality standards ("NAAQS" or "ambient air quality standards") for those air pollutants ("criteria pollutants") for which air quality criteria have been issued pursuant to Section 108 of the Act, 42 U.S.C. § 7408. The primary NAAQS are to be adequate to protect the public health with an adequate margin of safety, and the secondary NAAQS are to be adequate to protect the public welfare, from any

- 3 -

known or anticipated adverse effects associated with the presence of the air pollutant in the ambient air.

12. Under Section 107(d) of the Act, 42 U.S.C. § 7407(d), each state is required to designate those areas within its boundaries where the air quality is better or worse than the NAAQS for each criteria pollutant, or where the air quality cannot be classified due to insufficient data. An area that meets the NAAQS for a particular pollutant is an "attainment" area. An area that does not meet the NAAQS is a "nonattainment" area. An area that cannot be classified due to insufficient data is "unclassifiable."

13. Defendant's E. W. Brown Plant is located in Mercer County, Kentucky. At times relevant to this complaint, Mercer County has been designated as being in attainment with the NAAQS for $NO_x$, $SO_2$, and PM.

14. Pursuant to 42 U.S.C. § 7410, each State must adopt and submit to EPA for approval a State Implementation Plan ("SIP") that provides for the attainment and maintenance of the NAAQS. The Commonwealth of Kentucky has adopted a SIP that has been approved by EPA.

The Prevention of Significant Deterioration Requirements

15. Part C of the Act, 42 U.S.C. §§ 7470-7492, sets forth requirements for the prevention of significant deterioration ("PSD") of air quality in those areas designated as either attainment or unclassifiable for purposes of meeting the NAAQS. These requirements are designed to protect public health and welfare, to assure that economic growth will occur in a manner consistent with the preservation of existing clean air resources, and to assure that any decision to permit increased air pollution is made only after careful evaluation of all the consequences of such a

- 4 -

decision and after public participation in the decision making process. These provisions are referred to herein as the "PSD program."

16. Section 161 of the Act, 42 U.S.C. § 7471, requires that each applicable SIP contain a PSD program. The PSD program in the Kentucky SIP is codified at 401 Kentucky Administrative Regulation ("KAR") 51:017.

17. Section 165(a) of the Act, 42 U.S.C. § 7475(a), among other things, prohibits the construction and operation of a "major emitting facility" in an area designated as attainment unless a permit has been issued that comports with the requirements of Section 165 and the facility employs the best available control technology ("BACT") for each pollutant subject to regulation under the Act that is emitted from the facility. Section 169(1) of the Act, 42 U.S.C. § 7479(1), designates fossil-fuel fired steam electric plants of more than two hundred and fifty million British thermal units ("BTUs") per hour heat input and that emit or have the potential to emit one hundred tons per year or more of any pollutant to be "major emitting facilities."

18. Section 169(2)(C) of the Act, 42 U.S.C. § 7479(2)(C), defines "construction" as including "modification" (as defined in Section 111(a) of the Act). "Modification" is defined in Section 111(a) of the Act, 42 U.S.C. § 7411(a), to be "any physical change in, or change in the method of operation of, a stationary source which increases the amount of any air pollutant emitted by such source or which results in the emission of any air pollutant not previously emitted."

19. Applicable provisions in the PSD regulations in the Kentucky SIP (401 KAR 51:017, Sections 8 and 9, and all relevant prior versions of these regulations) have at all relevant times prohibited a major stationary source from constructing a major modification in an area

- 5 -

designated as attainment without, among other things, first obtaining a PSD permit, undergoing a new BACT determination, and applying BACT pursuant to such determination for each relevant pollutant. The Definitions contained in the PSD regulations in the Kentucky SIP (401 KAR 51:017, Section 1, and all relevant prior versions of these regulations) have at all relevant times defined "construction" to include "any physical change or change in the method of operation . . . which would result in a change in actual emissions." These regulations have at all relevant times also defined "major modification" to include "a physical change in or change in the method of operation of a major stationary source that would result in a significant net emissions increase of any pollutant subject to regulation under [the Clean Air Act]." These regulations have at all relevant times defined "major stationary source" to include fossil fuel-fired steam electric plants of more than 250 million BTUs per hour heat input.

New Source Performance Standards

20. Section 111(b)(1)(A) of the Act, 42 U.S.C. § 7411(b)(1)(A), requires the Administrator of EPA to publish a list of categories of stationary sources that emit or may emit any air pollutant. The list must include any categories of sources which are determined to cause or significantly contribute to air pollution which may endanger public health or welfare.

21. Section 111(b)(1)(B) of the Act, 42 U.S.C. § 7411(b)(1)(B), requires the Administrator of EPA to promulgate regulations establishing federal standards of performance for new sources of air pollutants within each of these categories. "New sources" are defined as stationary sources, the construction or modification of which is commenced after the publication of the regulations or proposed regulations prescribing a standard of performance applicable to

such source. 42 U.S.C. § 7411(a)(2). These standards are known as New Source Performance Standards ("NSPS").

22. Section 111(e) of the Act, 42 U.S.C. § 7411(e), prohibits an owner or operator of a new source from operating that source in violation of a NSPS after the effective date of the applicable NSPS to such source.

23. Pursuant to Sections 111 and 114 of the Act, 42 U.S.C. §§ 7411, 7414, EPA promulgated 40 C.F.R. Part 60, Subpart A, §§ 60.1 - 60.19, which contain general provisions regarding NSPS.

24. 40 C.F.R. § 60.1 states that the provisions of 40 C.F.R. Part 60 apply to the owner or operator of any stationary source which contains an affected facility, the construction or modification of which is commenced after the publication in Part 60 of any standard (or, if earlier, the date of publication of any proposed standard) applicable to that facility.

25. 40 C.F.R. § 60.2 defines "affected facility" as any apparatus to which a standard is applicable.

26. Pursuant to Section 111(b)(1)(A) of the Act, 42 U.S.C. § 7411(b)(1)(A), at 40 C.F.R. §§ 60.40a-49a (Subpart Da), EPA has identified electric utility steam generating units as one category of stationary sources that cause, or contribute significantly to, air pollution that may reasonably be anticipated to endanger public health or welfare.

27. EPA's general NSPS provisions apply to owners or operators of any stationary source that contains an "affected facility" subject to regulation under 40 C.F.R. Part 60. EPA has also promulgated NSPS for various industrial categories, including electric utility steam generating units. NSPS requirements for electric utility steam generating units for which construction or

- 7 -

modification is commenced after September 18, 1978, are codified at 40 C.F.R. Part 60, Subpart Da, §§ 60.40a-49a.

28. Subpart Da applies to any "affected facility" that is an "electric utility steam generating unit" that is capable of combusting more than 73 megawatts (250 million Btu/hour) heat input of fossil fuel (either alone or in combination with any other fuel) and for which construction or modification is commenced after September 18, 1978. 40 C.F.R. § 60.40a.

29. Under Subpart Da, "steam generating unit" means any furnace, boiler, or other device, other than nuclear steam generators, used for combusting fuel for the purpose of producing steam, including fossil-fuel-fired steam generators associated with combined cycle gas turbines. 40 C.F.R. § 60.41a.

30. An "electric utility steam generating unit," under Subpart Da, means any steam electric generating unit that is constructed for the purpose of supplying more than one-third of its potential electric output capacity and more than 25 megawatts ("MW") electrical output to any utility power distribution system for sale. 40 C.F.R. § 60.41a.

31. "Modification" under NSPS is defined as "any physical change in, or change in the method of operation of, an existing facility which increases the amount of any air pollutant (to which a standard applies) emitted into the atmosphere by that facility or which results in the emission of any air pollutant (to which a standard applies) into the atmosphere not previously emitted." 40 C.F.R. § 60.2. Under NSPS, any physical or operational change to an existing facility which results in an increase in the emission rate to the atmosphere of any pollutant to which a standard applies shall be considered a modification within the meaning of Section 111 of the Act, 42 U.S.C. § 7411. 40 C.F.R. § 60.14(a). Following the promulgation of 40 C.F.R. §

- 8 -

60.14(h) in July, 1992, no physical change, or change in method of operation, is treated as a modification of an existing electric steam generating unit if such change does not increase the maximum hourly emissions of a pollutant to which a standard applies above the maximum hourly emissions achievable at the unit during the 5 years prior to the change. 40 C.F.R. § 60.14(h).

32. Under 40 C.F.R. § 60.14, upon modification, an existing facility becomes an "affected facility" for which the applicable NSPS must be satisfied.

33. Section 111(e) of the Act, 42 U.S.C. § 7411(e), prohibits the operation of any new source in violation of an NSPS applicable to such source. Thus, a violation of an NSPS is a violation of Section 111(e) of the Act.

34. Pursuant to 40 C.F.R. § 60.7(a), any owner or operator of an affected facility subject to NSPS must furnish written notification to EPA of any physical or operational change to an existing facility which may increase the emission rate of any air pollutant to which a standard applies postmarked 60 days or as soon as practicable before the change is commenced with information describing the precise nature of the change, present and proposed emission control systems, productive capacity of the facility before and after the change, and the expected completion date of the change.

35. Pursuant to 40 C.F.R. § 60.8, the owner or operator of an affected facility that is an electric utility steam generating unit must conduct a performance test in accordance with 40 C.F.R. § 60.48a within 60 days after achieving the maximum production rate at which the affected facility will be operated, but not later than 180 days after initial startup of such facility and furnish EPA a written report of the results of such performance test.

36. Pursuant to 40 C.F.R. §§ 60.49a(b) and (i), the owner or operator of an electric utility steam generating unit subject to Subpart Da must submit quarterly reports to EPA containing certain emissions information.

37. Pursuant to 40 C.F.R. §§ 60.42a(a), 60.43a(a), and 60.44a(a), the owner or operator of an electric utility steam generating unit subject to Subpart Da may not discharge into the atmosphere from the affected facility any gases which contain $NO_x$, $SO_2$, or PM in excess of the applicable limitations.

38. Pursuant to Section 111(c) of the Act, 42 U.S.C. § 7411(c), the Commonwealth of Kentucky is a delegated state with respect to the relevant provisions of the NSPS program. The Kentucky regulations at 401 KAR 60:005 incorporate by reference the NSPS provisions codified in 40 C.F.R. §§ 60.1 to 60.19 and 60.40a to 60.49a.

Title V

39. Title V of the Act, 42 U.S.C. §§ 7661-7661f, establishes an operating permit program for certain sources, including "major sources." The purpose of Title V is to ensure that all "applicable requirements" for compliance with the Act, including PSD and NSPS requirements, are collected in one place.

40. Kentucky's Title V operating permit program was granted interim approval by EPA on November 14, 1995 (60 Fed. Reg. 57186) and final approval by EPA on October 31, 2001 (66 Fed. Reg. 54953). Kentucky's Title V operating permit program was previously codified at 401 KAR 50:035. It is currently codified at 401 KAR 52:020.

41. Section 502(a) of the Act, 42 U.S.C. § 7661a(a), and the Kentucky title V operating permit program (401 KAR 52:020, Section 3, and all relevant prior versions of this regulation)

- 10 -

have at all relevant times made it unlawful for any person to operate a major source except in compliance with a permit issued by a permitting authority under Title V.

42. Section 504(a) of the Act, 42 U.S.C. § 7661c(a), implementing regulations of the Act, 40 C.F.R. § 70.2, and the Kentucky Title V operating permit program regulations (401 KAR 52:020, Section 10, and all relevant prior versions of these regulations) have at all relevant times required that each Title V permit include, among other things, enforceable emission limitations and such other conditions as are necessary to assure compliance with applicable requirements of the Clean Air Act and the requirements of the applicable SIP, including any applicable PSD requirement to comply with an emission rate that meets BACT and any applicable NSPS requirement.

43. The Kentucky Title V operating permit program regulations (401 KAR 52:020 Sections 4 and 5, and all relevant prior versions of these regulations) require that a source submit a complete permit application which, among other things, identifies all applicable requirements (including any requirement to meet BACT pursuant to PSD and to comply with NSPS), certifies compliance with all applicable requirements, and contains a compliance plan for all applicable requirements for which the source is not in compliance.

The State Construction and Operating Permit Program in the Kentucky SIP

44. Prior to the approval of the Kentucky Title V operating permit program, the Kentucky regulations contained a general state construction and operating permit program that required, *inter alia,* that "air contaminant sources" obtain operating permits and that prohibited the operation of such sources in violation of such permits. This program was approved by EPA as part of the Kentucky SIP and was codified at 401 KAR 50:035. This program was replaced by

the Kentucky Title V operating permit program, first codified at 401 KAR 50:035 and later at
401 KAR 52:020.

ENFORCEMENT PROVISIONS

45. Sections 113(a)(1) and (3) of the Act, 42 U.S.C. § 7413(a)(1) and (3), provide that
the Administrator may bring a civil action in accordance with Section 113(b) of the Act
whenever, on the basis of any information available, the Administrator finds that any person has
violated or is in violation of any other requirement or prohibition of, *inter alia*, (1) the Prevention
of Significant Deterioration requirements of Section 165(a) of the Act, 42 U.S.C. § 7475(a); (2)
the New Source Performance Standards in Section 111 of the Act, 42 U.S.C. § 7411; (3) Title V
of the Act, 42 U.S.C. §§ 7661-7661f, or any rule or permit issued thereunder; or (4) the Kentucky
State Implementation Plan or any permit issued thereunder.

46. Section 113(b) of the Act, 42 U.S.C. § 7413(b), authorizes the Administrator to
initiate a judicial enforcement action for a permanent or temporary injunction, and/or for a civil
penalty of up to $25,000 per day for each violation occurring before January 31, 1997 and,
$27,500 per day for each such violation occurring on or after January 31, 1997, and $32,500 per
day for each such violation occurring after March 15, 2004, pursuant to the Federal Civil
Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701,
against any person whenever such person has violated, or is in violation of, *inter alia,* the
requirements or prohibitions described in the preceding paragraph.

47. Section 167 of the Act, 42 U.S.C. § 7477, authorizes the Administrator to initiate an
action for injunctive relief, as necessary to prevent the construction, modification or operation of
a major emitting facility which does not conform to the PSD requirements in Part C of the Act.

## DEFENDANT'S COAL-FIRED GENERATING UNITS

48. At all times pertinent to this civil action, Defendant was and is the owner and operator of the E. W. Brown Plant, located in Mercer County, Kentucky. The E. W. Brown Plant operates three coal-fired generating units, including E. W. Brown Unit No. 3.

49. At all times pertinent to this civil action, the E. W. Brown Plant and the E. W. Brown Unit No. 3 were each a "major emitting facility" and a "major stationary source," within the meaning of the Act and the PSD regulations in the Kentucky SIP for $NO_x$, $SO_2$, and PM. E. W. Brown Unit No. 3 is an "affected facility" and an "electric utility steam generating unit" that is subject to the requirements of NSPS, including Subpart Da thereof. At all times pertinent to this civil action, the E. W. Brown Plant was a "major source" within the meaning of title V of the Act and the Kentucky title V program regulations.

## FIRST CLAIM FOR RELIEF

### (PSD Violations at E. W. Brown Plant, Unit No. 3)

50. In or about April 1997, Defendant commenced construction of one or more major modifications, as defined in the Act and the Kentucky SIP, at the E. W. Brown Plant. These modifications included one or more physical changes or changes in the method of operation at E. W. Brown Unit No. 3, including, but not necessarily limited to, work involving various replacements or renovations of major components of the boiler and turbine. The purpose of the modifications was to increase the capacity at E. W. Brown Unit No. 3 by increasing the surface area of the reheater and replacing the turbine with a new higher capacity turbine. These physical changes or changes in the method of operation resulted in significant net emissions increases, as defined by the relevant PSD regulations, of one or more of the following: $NO_x$, $SO_2$, and/or PM.

51. Defendant did not comply with the PSD requirements in the Kentucky SIP with respect to the major modifications at E. W. Brown Unit No. 3. Among other things, Defendant failed to obtain a PSD permit as required by the Kentucky SIP (401 KAR 51:017 Section 8) prior to commencing construction and operation of the major modifications at E. W. Brown Unit No. 3. Defendant did not undergo a new BACT determination in connection with these major modifications. Defendant failed to install and operate the best available control technology for control of $NO_x$, $SO_2$, and/or PM, pursuant to such determination, as required by the Kentucky SIP (401 KAR 51:017 Section 9) at E. W. Brown Unit No. 3.

52. Defendant has violated and continues to violate Section 165(a) of the Act, 42 U.S.C. § 7475(a), and the PSD provisions of the Kentucky SIP (401 KAR 51:017 and all relevant prior versions of these regulations) at E. W. Brown Unit No. 3. Unless restrained by an order of this Court, these and similar violations of the Act will continue.

53. As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set forth above subject Defendant to injunctive relief and civil penalties of up to $27,500 per day for each such violation occurring on or after January 31, 1997, and $32,500 per day for each such violation occurring on or after March 15, 2004, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

## SECOND CLAIM FOR RELIEF

(Title V Violations at E. W. Brown Unit No. 3 - operation with a deficient permit)

54. As set forth above, Defendant commenced one or more major modifications at E. W. Brown Unit No. 3, as defined under the PSD regulations in the Kentucky SIP. As a result, these modifications triggered the requirements to, *inter alia,* undergo a new BACT determination, to

- 14 -

obtain a PSD permit establishing emissions limitations that meet BACT pursuant to such a determination, and to operate in compliance with such limitations. Defendant failed to satisfy these requirements.

55. Subsequently, Defendant failed to submit a complete application for a Title V operating permit for E. W. Brown Unit No. 3 and identify all applicable requirements, accurately certify compliance with such requirements, and contain a compliance plan for all applicable requirements for which the source was not in compliance (including the requirement to meet BACT pursuant to a new BACT determination under PSD). Defendant failed to obtain a proper or adequate Title V operating permit for E. W. Brown Unit No. 3 that contained emission limitations for $NO_x$, $SO_2$, and/or PM that met BACT pursuant to a new BACT determination. Defendant thereafter operated E. W. Brown Unit No. 3 without meeting such limitations and without having a valid operating permit that required compliance with such limitations or that contained a compliance plan for all applicable requirements for which the source was not in compliance. Defendant's conduct violated Sections 502(a) and 504(a) of the Act, 42 U.S.C. §§ 7661a(a) and 7661c(a), and the Kentucky Title V operating permit program regulations (401 KAR 52:020 and all relevant prior versions of these regulations). Unless restrained by an order of this Court, these and similar violations will continue.

56. As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set forth above subject Defendant to injunctive relief and civil penalties of up to $25,000 per day for each violation occurring before January 31, 1997, $27,500 per day for each such violation occurring on or after January 31, 1997, and $32,500 per day for each such violation occurring on

- 15 -

or after March 15, 2004, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

## THIRD CLAIM FOR RELIEF

(NSPS violations at E. W. Brown Plant, Unit No. 3, 1997 Project)

57. Defendant is the "owner or operator," within the meaning of Section 111(a)(5) of the Act, 42 U.S.C. § 7411(a)(5), and 40 C.F.R. § 60.2, of an electric utility steam generating unit within the meaning of 40 C.F.R. §§ 60.40a and 60.41a, designated E. W. Brown Unit No. 3, located at the E. W. Brown Plant.

58. From March to April 1997, Defendant undertook the "modification" of an "existing facility" at E. W. Brown Unit No. 3 as those terms are defined in the NSPS. 40 C.F.R. §§ 60.2, 60.14. This modification included, but was not necessarily limited to, replacement or renovation of major components of the boiler and turbine at the unit. The purpose of this modification was to increase the capacity at E. W. Brown Unit No. 3 by increasing the surface area of the reheater and replacing the turbine with a new higher capacity turbine.

59. The effect of this modification was to increase the gross MW generation capacity at E.W. Brown Unit No. 3 and to increase the maximum hourly emission rate of PM, $SO_2$ and/or $NO_x$ from E. W. Brown Unit No. 3 above the maximum hourly emissions achievable at that unit during the applicable baseline period prior to the change.

60. The effect of this modification was to increase the megawatt generation capacity at the unit from 400 MW to 446 MW. The increase in generation capacity resulted in a corresponding increase in maximum hourly emissions rate of 133 lbs/hr for $NO_x$, 643 lbs/hr for $SO_2$ and 38 lbs/hr for PM.

61. As a result of this modification, E. W. Brown Unit No. 3 is an "affected facility" under Subparts A and Da of NSPS and is subject to the NSPS, including provisions of Subpart A and Da of the NSPS.

62. With regard to the modification of E. W. Brown Unit No. 3, Defendant failed to furnish written notification to EPA or the Commonwealth of Kentucky of the physical changes to the Unit which may have increased the emission rate of any air pollutant to which a standard applies. This notice is required to be postmarked 60 days or as soon as practicable before the change is commenced with information describing the precise nature of the change, present and proposed emission control systems, productive capacity of the facility before and after the change, and the expected completion date of the change as required by 40 C.F.R. § 60.7(a).

63. Defendant failed to conduct a performance test in accordance with the procedures required by § 60.48a within 60 days after achieving the maximum production rate or within 180 days after initial startup at E. W. Brown Unit No. 3 and furnish a written report of the results of such performance test to EPA or the Commonwealth of Kentucky after each of the modifications in violation of 40 C.F.R. § 60.8.

64. Defendant failed to report emission information to EPA or the Commonwealth of Kentucky following the modifications listed above in violation of 40 C.F.R. §§ 60.49a(b) and (i).

65. Defendant failed to comply and continues to fail to comply with the NSPS emissions limitations applicable to E. W. Brown Unit No. 3 after the modifications listed above for at least one of the following pollutants -- PM, $SO_2$, and/or $NO_x$ -- after the refurbishment in violation of 40 C.F.R. §§ 60.42a, 60.43a, and 60.44a.

66. Each day that Defendant fails to comply with each of the NSPS requirements described in this Complaint constitutes a violation of the NSPS regulations and the Act. Unless restrained by an order of this Court, these and similar violations will continue.

67. As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set forth above subject Defendant to injunctive relief and civil penalties of up to $25,000 per day for each violation occurring before January 31, 1997, $27,500 per day for each such violation occurring on or after January 31, 1997, and $32,500 per day for each such violation occurring on or after March 15, 2004, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

## FOURTH CLAIM FOR RELIEF

(Operating Permit Violations at E. W. Brown Unit No. 3)

68. On January 20, 1993, the Kentucky Natural Resources and Environmental Protection Cabinet issued operating permit number 0-86-068 (Revision 2) to Defendant for the operation of the E.W. Brown Plant (the "1993 Brown state operating permit"). Among other requirements for operation of the E.W. Brown Plant, the 1993 Brown state operating permit included as an express condition, as had earlier Brown operating permits going back at least to 1978, that the maximum heat input rate for Unit No. 3 of the Plant shall not exceed 4128 million BTU per hour. The 1993 Brown state operating permit was issued pursuant to a provision of the Kentucky SIP approved by EPA and codified first at 401 KAR 50:035, and now at 401 KAR 52:020.

69. On March 1, 2005, the Kentucky Natural Resources and Environmental Protection Cabinet issued a Title V permit to Defendant for the operation of the Brown Plant (the "Brown title V permit"). The Title V permit incorporated all previous permit conditions and

- 18 -

requirements for the operation of Brown Unit 3, including the 4128 million BTU per hour maximum heat input rate contained in the 1993 Brown state operating permit.

70. At various times since 1997, when KU increased the capacity of Brown Unit No. 3, Defendant has operated Brown Unit No. 3 at a heat input rate in excess of 4128 million BTU per hour, in violation of the 1993 Brown state operating permit, the state operating permit regulations in the Kentucky SIP (401 KAR 50:035), the Brown Title V permit, the Kentucky Title V operating permit regulations (401 KAR 52:020 and all relevant prior versions of these regulations), and Section 502(a) of the Act, 42 U.S.C. § 7661a(a). Unless restrained by an order of this Court, these and similar violations will continue.

71. As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set forth above subject Defendant to injunctive relief and civil penalties of up to $25,000 per day for each violation occurring before January 31, 1997, $27,500 per day for each such violation occurring on or after January 31, 1997, and $32,500 per day for each such violation occurring on or after March 15, 2004, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

## PRAYER FOR RELIEF

WHEREFORE, based upon all the allegations set forth above, the United States of America requests that this Court:

1. Permanently enjoin the Defendant from operating the E. W. Brown Plant, including the construction of future modifications, except in accordance with the Clean Air Act and any applicable regulatory requirements;

2. Order Defendant to remedy its past violations by, among other things, requiring Defendant to install and operate, as appropriate, the best available control technology at its E. W. Brown Plant Unit No. 3, for each pollutant subject to regulation under the Clean Air Act;

3. Order Defendant to apply for permits that are in conformity with the requirements of the PSD and Title V programs;

4. Order Defendant to comply with the NSPS provisions of the Act and the NSPS regulations;

5. Order Defendant to conduct audits of its operations to determine if any additional modifications have occurred which would require it to meet the requirements of PSD and NSPS and report the results of these audits to the United States;

6. Order defendant to take other appropriate actions to remedy, mitigate, and offset the harm to public health and the environment caused by the violations of the Clean Air Act alleged above;

7. Assess a civil penalty against Defendant of up to $27,500 per day for each violation of the Clean Air Act and applicable regulations which occurred on or after January 31, 1997, and $32,500 per day for each such violation occurring on or after March 15, 2004;

- 20 -

8. Award Plaintiff its costs of this action; and,

9. Grant such other relief as the Court deems just and proper.

Dated: January 29, 2007

Respectfully submitted,

MATTHEW J. MCKEOWN
Acting Assistant Attorney General
Environment and Natural Resources
Division
United States Department of Justice

JEFFREY M. PRIETO
JOHN W. SITHER
Environmental Enforcement Section
Environment and Natural Resources
Division
P.O. Box 7611
Washington, D.C. 20044-7611
(202) 616-7915

AMUL R. THAPAR
United States Attorney
Eastern District of Kentucky

ANDREW SPARKS
Assistant U.S. Attorney
Suite 400
110 West Vine Street
Lexington, Kentucky 40507-1671
(859) 233-2661

OF COUNSEL:

JENNIFER LEWIS
Associate Regional Counsel
U.S. EPA, Region 4
61 Forsyth Street, S.W.
Atlanta, Georgia 30303

- 21 -